NORTHERN NATURAL GAS
COMPANY, Appellant,

v.

CHISOS JOINT VENTURE I and
Duke Energy Field Services,
Inc., Appellee.

No. 08–03–00075–CV.

Court of Appeals of Texas,
El Paso.

July 1, 2004.

Douglas R. Little, Houston, for appellant.

Tom Scott, Bullock, Scott, Neisig & Owens, Midland, Murray J. Fogler, Houston, for appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Northern Natural Gas Company appeals from summary judgment entered in favor

of Chisos Joint Venture I (Chisos) and Duke Energy Field Services, Inc. (Duke). We affirm.

## FACTUAL SUMMARY

On June 15, 1965, several natural gas interest owners entered into an agreement (the C & O Agreement) for the construction and operation of the Coyanosa Facility in Pecos County which would serve to gather, separate, and treat the gas produced by these owners. Ownership is determined annually based on the proportion of the volume of gas each producer delivers to the Coyanosa Facility. Under the agreement, each producer is responsible for its proportionate share of the costs of operating, maintaining, and improving the Facility. Each owner's interest is assignable so long as the assignee assumes responsibility for payment of its share of the Facility costs and a certified copy of the assignment is provided to the operator. Socony Mobil Oil Company was the original operator under the C & O Agreement, but in 1996, Duke succeeded to Mobil's interests and became operator. Duke's obligations as operator include collecting the operating costs from each owner.

Miles Kimball Company (Kimball) was one of the original owners of the Coyanosa Facility. Under the C & O Agreement, Kimball was obligated to pay its proportionate share of all costs and expenses. The production from Kimball's Thagard No. 1 Well was transported and treated through the Coyanosa Facility and sold to Northern pursuant to a 1965 Gas Purchase Contract (GPC). The GPC specified a contract period of twenty-five years and provided for five consecutive five-year pricing periods with escalating prices per mmcf. The GPC expired in May 1991.

On August 1, 1977, Kimball and Northern entered into a Purchase and Sale Agreement (the PSA) whereby Northern purchased Kimball's interest in the Coyanosa Facility for $600,000. Northern agreed to pay its proportionate share of the costs and expenses related to the Coyanosa Facility beginning on the effective date of the PSA. As part of the PSA, Kimball agreed to drill a test well on another lease it owned in Pecos County. Sections 1 and 8 of the PSA expressly excluded the gas sales from Kimball's well from the PSA because the gas sales were subject to the 1965 GPC. The parties to the PSA expressly made the PSA subject to the C & O Agreement which contains provisions pertaining to the transfer of facility interests. The C & O Agreement was attached to the PSA and incorporated by reference. After Kimball performed its obligation to drill the test well, Northern and Kimball finalized the transfer of Kimball's ownership in the Coyanosa Facility with a formal Assignment and Conveyance.

Northern paid Kimball $600,000 pursuant to the terms of the PSA, and for at least the next eighteen years, Northern paid its proportionate share of the Coyanosa Facility costs and expenses. However, after Duke billed Northern for its portion of a compressor installation completed in January 1998, Northern refused to pay. In April 1999, Duke notified Northern that it was in default of its obligations and demanded that Northern pay $548,221.14. Further, Duke threatened to "shut in" the gas attributable to Northern's interest, but Northern claimed that the agreements it entered into with Kimball did not convey ownership in the facility, and therefore, Northern was not responsible for payment of costs. The gas which Duke threatened to "shut in" was being delivered to Chisos because Chisos, in 1996, had acquired Kimball's leasehold interest in Pecos County. The shutting in of Northern's revenues would have had the effect of suspending

Chisos' revenues. Caught in the middle of the dispute between Duke and Northern, Chisos filed suit in Pecos County against both parties on April 28, 2000.

Chisos' suit sought a declaratory judgment to determine that the PSA is a valid and enforceable agreement which conveyed ownership of the property to Northern and that Northern is liable for all costs, liabilities, and expenses relating to the property including those demanded by Duke. Duke answered and filed a cross-action against Northern for breach of contract and declaratory relief. It also filed a counterclaim against Chisos in the event Northern was held not responsible to pay the expenses. Duke was subsequently realigned as a plaintiff.

Northern filed a motion to transfer venue alleging that venue is proper in Harris County. Chisos opposed the motion to transfer venue. Following a hearing, the trial court denied Northern's motion to transfer. Both Duke and Chisos filed motions for summary judgment. Northern initially responded that the various agreements did not convey any ownership interest in the Coyanosa Facility to Northern. Following a hearing on the summary judgment motions, Northern filed a supplemental response revealing for the first time that it had conveyed its interest in the Coyanosa Facility to Enron Permian Gathering, Inc. (EPGI) on December 31, 1995. The trial court rejected Northern's arguments and specifically found that the agreements at issue were not ambiguous. Granting summary judgment in favor of Duke and Chisos, the trial court declared that Northern is an owner of the Coyanosa Facility and is responsible for its share of the costs and expenses. The court further found that Chisos is not responsible for payment of the Facility expenses. The trial court granted final judgment in favor of Duke against Northern in the amount of $831,341.72, pre-judgment interest in the amount of $280,185.69, and attorney's fees in the amount of $75,000. The judgment also awarded Chisos reasonable and necessary attorney's fees in the amount of $100,000.

### VENUE

In its first issue, Northern contends that the trial court erred by denying the motion to transfer venue to Harris County. In its petition, Chisos invoked the mandatory venue provisions of Section 15.011 of the Texas Civil Practice and Remedies Code, alleging that this is a suit to quiet title to and remove encumbrances from real property. Northern responded with a motion to transfer venue to Harris County. Chisos then filed an amended petition asserting that venue in Pecos County was proper not only under Section 15.011 but also under Section 15.002(a)(1) because a substantial portion of the events or omissions giving rise to the claim arose in Pecos County. The trial court denied the motion without specifying the basis for its determination that venue was proper in Pecos County.

*General Law and Standard of Review*

Venue may be proper in many counties under general, mandatory, or permissive venue rules. *Wilson v. Texas Parks and Wildlife Dept.,* 886 S.W.2d 259, 260 (Tex.1994). The plaintiff is given the first choice in the filing of the lawsuit. *Id.* If the plaintiff's venue choice is not properly challenged through a motion to transfer, the propriety of venue is fixed in the county chosen by the plaintiff. *Wilson,* 886 S.W.2d at 260; TEX.CIV.PRAC. & REM.CODE ANN. § 15.063 (Vernon 2002); TEX.R.CIV.P. 86–1. If a defendant objects to the plaintiff's venue choice and properly challenges that choice through a motion to transfer, the question of proper venue is raised.

452

*Wilson*, 886 S.W.2d at 260; Tex.R.Civ.P. 86. The burden is on the plaintiff to prove that venue is maintainable in the county of suit. *Wilson*, 886 S.W.2d at 260; Tex. R.Civ.P. 86. If the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another specified county of proper venue. *Wilson*, 886 S.W.2d at 260; Tex.Civ.Prac. & Rem.Code Ann. § 15.063(1)("The court ... shall transfer an action to another county of proper venue if ... the county in which the action is pending is not a proper county...."). If the plaintiff meets the burden, the trial court must maintain the lawsuit in the county where it was filed. *Wilson*, 886 S.W.2d at 260–61; Tex.R.Civ.P. 87–3(c)("If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit ... then the cause shall not be transferred but shall be retained in the county of suit...."). Together, Rule 87–3(c) and Section 15.063(1) require that a lawsuit pleaded and proved to be filed in a county of proper venue may not be transferred. *Wilson*, 886 S.W.2d at 261. Therefore, if the plaintiff chooses a county of proper venue, and this is supported by proof as required by Rule 87, no other county can be a proper venue in that case. *Id.* This rule gives effect to the plaintiff's right to select a proper venue. *Id.*

When examining a venue ruling, an appellate court is obliged to conduct an independent review of the entire record, including the trial on the merits, to determine whether venue was proper in the ultimate county of suit. Tex.Civ.Prac. & Rem.Code Ann. § 15.064(b)(Vernon 2002)("In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits."); *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993). This review should be conducted like any other review of a trial court's findings of fact and legal rulings, except that the evidence need not be reviewed for factual sufficiency. *Ruiz*, 868 S.W.2d at 758. If there is probative evidence to support the trial court's determination, even if the preponderance of the evidence is to the contrary, the appellate court must uphold the trial court's venue determination. *Colonial County Mutual Insurance Company v. Valdez*, 30 S.W.3d 514, 527 (Tex.App.-Corpus Christi 2000, no pet.); *see also Ruiz*, 868 S.W.2d at 758. Although we view the record in the light most favorable to the trial court's ruling, we do not defer to the trial court's application of the law to the facts of the case. *See Ruiz*, 868 S.W.2d at 758.

*Mandatory Venue*

As a general rule, all suits must be brought (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, (2) in the county of the defendant's residence at the time the cause of action accrued if the defendant is a natural person, (3) in the county of the defendant's principal office if the defendant is not a natural person, or (4) in the county in which the plaintiff resided when the cause of action accrued. Tex.Civ.Prac. & Rem.Code Ann. § 15.002(a); *Madera Production Company v. Atlantic Richfield Company*, 107 S.W.3d 652, 657 (Tex.App.-Texarkana 2003, pet. denied). However, venue is mandatory in the county in which all or a part of property is located in (1) actions for recovery of real property or an estate or interest in real property, (2) actions for partition of real property, (3) actions to remove encumbrances from the title to real property, (4) actions for recovery of damages to real property, or (5) actions to quiet title to real property. Tex.Civ.Prac. & Rem.Code Ann. § 15.011; *Madera*, 107 S.W.3d at 657. A plaintiff must allege two

"venue facts," and establish them by *prima facie* proof if specifically denied, to show that venue is mandatory under Section 15.011:(1) that the nature of the suit fits within those listed in Section 15.011; and (2) that all or part of the realty at issue is located in the county of suit. *In re Stroud Oil Properties, Inc.*, 110 S.W.3d 18, 24 (Tex.App.-Waco 2002, orig. proceeding). The fact that Chisos brought its suit in the form of a declaratory judgment action is not dispositive of the issue before us. *See Renwar Oil Corporation v. Lancaster*, 154 Tex. 311, 276 S.W.2d 774, 776 (1955). It is the ultimate or dominant purpose of a suit that determines whether a particular suit falls under the mandatory venue statute, and not how the cause of action is described by the parties. *Bracewell v. Fair*, 638 S.W.2d 612, 615 (Tex.App.-Houston [1st Dist.] 1982, no writ). We determine the nature of the suit by looking to the rights asserted in the plaintiff's petition and the relief sought therein. *Stroud Oil*, 110 S.W.3d at 25. Once it is demonstrated that the court's judgment would have some effect on an interest in realty, then the venue of the suit is properly fixed under the mandatory venue statute. *Bracewell*, 638 S.W.2d at 615.

 Northern argues that venue is not proper under Section 15.011 because Chisos sought a declaratory judgment regarding the rights of the parties under a contract and did not seek any relief removing an encumbrance on real property. It further asserts that this is a suit which only incidentally involves land located in Pecos County. We disagree. The primary purpose of Chisos' suit is to remove an encumbrance on and prevent irreparable damage to its own leasehold interest which would be caused by the shut-in of production. In response to the motion to transfer venue, Chisos offered evidence that the Devonian and Ellenburger reservoirs were developed with multiple wells all draining from a common reserve. During any period of shut-in, other wells which were operating at capacity would continue to produce from the common reservoirs and would recover reserves that otherwise would be produced from Chisos' real property. Irreparable damage would occur to Chisos because there would be no way to recover the lost production. Duke threatened to shut-in production because Northern had not met its obligations as an owner in the Coyanosa Facility to pay expenses under the C & O Agreement. Northern refused to pay these expenses because it claimed that the 1977 PSA did not convey to it an ownership interest in the Coyanosa Facility. In order to maintain its action and prevent damage to its leasehold interest, Chisos expressly sought and obtained a declaration that Northern owned an interest in the Coyanosa Facility and was liable for the payment of expenses. Consequently, the final judgment established Northern's ownership or title to the Coyanosa Facility and ultimately prevented damage to Chisos' leasehold interest, both of which are located in Pecos County. Having considered the entire record, we conclude that venue is proper in Pecos County pursuant to Section 15.011. *See Madera*, 107 S.W.3d at 659–60 (where action to recover contract damages was ultimately dependent on proof of ownership rights in mineral lease, the only proper venue was in the county where the real property was located). Issue One is overruled.

## SUMMARY JUDGMENT

In its second issue, Northern challenges the summary judgments granted in favor of Chisos and Duke alleging that it raised a genuine issue of material fact concerning elements of the plaintiffs' claims and at least one of Northern's defenses. Both Duke and Chisos moved for traditional summary judgment on their claims.

In a traditional summary judgment proceeding, the standard of review on appeal is whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.-El Paso 1996, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Duran*, 921 S.W.2d at 784. In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Duran*, 921 S.W.2d at 784.

### *The Agreements are Unambiguous*

 The trial court found that the C & O Agreement, the PSA, and Assignment and Conveyance are unambiguous. Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Id.* On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous,

which creates a fact issue on the parties' intent. *Id.* An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Id.* For an ambiguity to exist, both interpretations must be reasonable. *Id.*

The PSA contains the following relevant recitations:

WHEREAS, Kimball desires to sell to Northern Natural and Northern Natural desires to purchase from Kimball all of the interest of Kimball in and to the Facilities, as hereinafter described, in accordance with and subject to the terms, provisions, and conditions hereinafter stated;

NOW, THEREFORE, for and in consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.

Kimball agrees to sell to Northern Natural and Northern Natural agrees to purchase from Kimball, in accordance with the terms and provisions hereof, all of the interests of Kimball under the C & O Agreement in and to the following facilities, as defined in Section I of the C & O Agreement:

(a) Coyanosa Central Separating and Treating Facility, including the separation and gas treating facility, plant sites, storage (whether above or below ground), tankage, shippage, loadage, and all necessary appurtenances thereto, including any enlargements thereof; and

(b) Coyanosa Gathering System, including the well lateral system, satellite systems, easements and rights-of-way, together with all extensions or enlargements thereof;

which interests Kimball represents to be at the present time those certain inter-

ests set forth in Schedule 2 attached hereto and made a part hereof, together with all rights pertaining thereto under and pursuant to the C & O Agreement, except as hereinafter expressly otherwise provided.

Northern agreed to pay Kimball the sum of $600,000 in consideration of the conveyance but the payment did not become due until after Kimball spudded the test well as provided elsewhere in the PSA.

 Referencing the C & O Agreement, the Assignment and Conveyance provides as follows:

NOW, THEREFORE, the undersigned Kimball, for and in consideration of the sum of Six Hundred Thousand and No/100 Dollars ($600,000.00) paid in cash by Northern Natural to Kimball, the receipt and sufficiency of which are hereby acknowledged, does hereby Grant, Bargain, Sell, Convey, and Assign unto Northern Natural all of the following in Pecos County, Texas:

(1) All of the interest of Kimball, presently being an undivided 9.108373% interest, in and to the Coyanosa Central Separating and Treating Facility, as defined in Section I of the C & O Agreement, including the separation and gas treating facility, the plant sites (including the present plant site and improvements thereon situated in Section 48, T.T. RR. Co. Survey), storage (whether above or below ground), tankage, shippage, loadage, and all necessary appurtenances thereto, including any enlargements thereof, together with a like interest in all additional facilities and appurtenances of any kind or character which the Facility Owners may authorize as provided in said C & O Agreement; and

(2) All of the interests of Kimball in and to the Coyanosa Gathering System, as defined in Section I of the C & O Agreement, including the well lateral system, satellite systems, easements, and rights-of-way, together with all extensions of enlargements thereof, said interests of Kimball presently being as follows:

(a) 100% interest in Well Lateral System extending from Kimball's G.F. Thagard et al Well No. 1 in Section 18, Block C–2, P.S.L. Survey, to Satellite Gathering Station in Section 53, Block OW; and

(b) An undivided 16.4474% interest in Satellite System extending from said Satellite Gathering Station to the Central Separating and Treating Facility (Plant A) in Section 48, T.T. RR. Co. Survey;

together with all rights pertaining thereto under and pursuant to the C & O Agreement, except as hereinafter expressly otherwise provided.

Northern alleges that "[b]y the PSA Kimball appeared to agree to convey to Northern outright its interests in the Coyanosa Facility" in exchange for $600,000 and other consideration. It claims, however, that the parties did not intend to convey Kimball's interest in the Coyanosa Facility. Instead, the parties intended only for Northern to assume Kimball's costs connected with the Facility and only until the GPC expired on May 1, 1991. According to Northern, it paid $600,000 not for the conveyance of property but in exchange for Kimball agreeing to drill the test well. The difficulty with this argument is that Northern does not identify any language in the PSA or Assignment and Conveyance which is unclear, uncertain, or subject to two reasonable interpretations. Instead, Northern relies exclusively on extrinsic evidence to show the intent of the parties at the time the conveyance was made. It is well established that parol evidence is not admissible for the purpose of creating an ambiguity. *Na-*

*tional Union Fire Insurance Co. of Pittsburgh PA. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex.1995). Moreover, we have reviewed the agreements and conclude that the trial court did not err in finding them unambiguous.

## MISTAKE OF FACT

Northern additionally argues that the trial court erred in granting summary judgment because it raised a fact issue regarding its mistake of fact defense. In response to the motions for summary judgment, Northern offered the testimony of William J. Poehling, a former employee and expert witness, who stated that if the PSA contains an outright conveyance and obligates Northern to pay for the costs of gathering and treating Kimball's gas in perpetuity, even though it could not legally purchase this gas after FERC Order No. 636–C, it is a mistake in drafting. Northern argues that either there was a mutual mistake of fact by the parties to the PSA in drafting the agreement as an outright conveyance and by misstating the payment of $600,000 as consideration for the conveyance of the Coyanosa Facility rather than as consideration for Kimball's drilling of the test well, or it made a unilateral mistake of fact.

■■■ A mutual mistake of fact occurs where the parties to an agreement have a common intention, but the written contract does not reflect the intention of the parties due to a mutual mistake. *Okon v. MBank, N.A.*, 706 S.W.2d 673, 675 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). In order for the affirmative defense of mutual mistake to be sustained on summary judgment, the defendant must raise fact issues showing that both parties were acting under the same misunderstanding of the same material fact. *Id.* Parol or extrinsic evidence may be introduced to show mutual mistake, whereby the con-

tract failed to express the actual agreement of the parties, and may be introduced to prove modifications which must be made in cases where mutual mistake has been alleged. *Id.* Where it is alleged that by reason of mutual mistake, an agreement does not express the real intentions of the parties, extrinsic evidence is admissible to show the real agreement. *Id.*

■■■ Northern has offered evidence showing its own beliefs about the purpose of the agreement, but it has offered no evidence that Kimball likewise suffered from a mistake of fact. Consequently, it did not establish a fact issue which would preclude summary judgment. *See Newsom v. Starkey*, 541 S.W.2d 468, 472–73 (Tex. Civ.App–Dallas 1976, writ ref'd n.r.e.)(where there was no evidence that plaintiff operated under same mistake of fact alleged by defendant, there was no fact issue raised regarding affirmative defense of mutual mistake of fact and summary judgment was proper).

■■■ In order to be entitled to equitable relief on the grounds of unilateral mistake, a plaintiff must show: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; (4) the parties can be placed in status quo in the equity sense; i.e., rescission must not result in prejudice to the other party except for the loss of his bargain. *James T. Taylor and Son, Inc. v. Arlington Ind. School Dist.*, 160 Tex. 617, 335 S.W.2d 371, 373 (1960); *Roland v. McCullough*, 561 S.W.2d 207, 213 (Tex.Civ.App.-San Antonio 1978, writ ref'd n.r.e.). There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties. *Taylor*, 335 S.W.2d at 373.

Northern makes no effort in its brief to demonstrate how it raised a fact issue as to each element of its defense, particularly how the mistake was made regardless of the exercise of ordinary care or whether the parties could be place in status quo from an equitable standpoint. Consequently, Northern's argument regarding unilateral mistake of fact is without merit.

## COMMERCIAL IMPRACTICABILITY AND FRUSTRATION OF PURPOSE

Challenging the summary judgment granted on Duke's breach of contract claim, Northern next contends that it is excused from performance of the contract under the doctrine of commercial impracticability. It points to the adoption of FERC Order No. 636–C as the event which makes continued performance of the agreement impracticable. According to Northern, that order was issued in 1992 but did not become final until April 1997, and it precluded Northern from purchasing natural gas from any source.

The doctrine of commercial impracticability constitutes a defense to the performance of a contract in Texas. *See Centex Corporation v. Dalton,* 840 S.W.2d 952, 954 (Tex.1992); *Tractebel Energy Marketing, Inc. v. E.I. Du Pont De Nemours and Company,* 118 S.W.3d 60, 66 (Tex.App.-Houston [14th Dist.] 2003, no pet. h.). Section 261 of the Restatement (Second) of Contracts provides:

§ 261. Discharge by Supervening Impracticability.

Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981).

The Texas Supreme Court has recognized that a governmental regulation or order that makes the performance of a duty impossible "is an event the non-occurrence of which was made a basic assumption on which the contract was made." *Centex,* 840 S.W.2d at 954, *quoting* RESTATEMENT (SECOND) OF CONTRACTS § 264 (1981). In *Centex,* a company agreed to pay a finder's fee to Dalton if it could successfully acquire four thrift institutions. *Centex,* 840 S.W.2d at 953. The Federal Home Loan Bank Board, however, approved the acquisition conditioned on a prohibition against the payment of finder's fees. *Centex,* 840 S.W.2d at 953. Centex refused to pay the finder's fee and Dalton sued for breach of contract. *Id.* at 953–54. The trial court granted summary judgment in favor of Dalton and the court of appeals affirmed. *Id.* at 952. The Supreme Court reversed, holding that the contract was unenforceable because a governmental regulation prohibited Centex's performance under the agreement. *Id.* at 954.

Due to its purchase of Kimball's interest in the Coyanosa Facility in 1977, Northern became obligated to pay its proportionate share of facility expenses. Northern purchased gas from Kimball under a separate contract which expired by its own terms in 1991. Thus, Northern ceased purchasing gas from Kimball in 1991, but it remained obligated thereafter to pay its share of the Coyanosa Facility expenses under the C & O Agreement. Unlike *Centex,* FERC Order No. 636–C does not address Northern's obligation to pay facility expenses. We recognize that FERC Order No. 636–C leaves Northern with an expense obligation and no corre-

sponding income but it does not rise to the level of the direct prohibition involved in *Centex*. Northern's commercial impracticability argument is essentially founded upon its insistence that it did not purchase Kimball's interest in the Coyanosa Facility but merely agreed to assume Kimball's expense obligation during the term of the GPC Agreement. If that were the case, Northern's argument might be more persuasive but we have already rejected its interpretation of the PSA. While economic and regulatory circumstances have undoubtedly changed since Northern purchased Kimball's interest in the Coyanosa Facility, FERC Order No. 636–C does not relieve Northern of its obligations under the C & O Agreement.

## THE 1995 ASSIGNMENT

Northern next argues that summary judgment is improper because it did not own an interest in the Coyanosa Facility at the time summary judgment was granted. It claims that it has no liability under the C & O Agreement after December 31, 1995 because it assigned its interest to EPGI. Therefore, Northern specifically challenges the declaration that it has a continuing obligation to pay expenses in the Facility.[1]

Section XII of the C & O Agreement, entitled "Transfer of Facility Interest," provides as follows:

1. All sales, transfer, assignments, mortgages or other conveyances of the interest of any Facility Owner in said Facility shall be made expressly subject to this Agreement and shall not be binding on any of the Facility Owners other than the party selling, transferring, assigning, mortgaging, or conveying the same unless and until the first day of the month following the day a certified copy of the instrument evidencing such change in ownership has been delivered to Facility Operator.

2. All such sales, transfers, assignments or conveyances of an interest in the said Facility, whether expressly so stated or not, shall operate to impose upon the party or parties acquiring such interest its or their proportionate part of all costs and expenses and other obligations chargeable hereunder to such interest and shall likewise operate to give and grant to the party or parties acquiring such interest its or their proportionate part of all benefits accruing hereunder.

Northern admits that it did not deliver a certified copy of the assignment to Mobil, the operator at the time of the assignment. Even though Northern relied on the assignment in a February 1, 2002 supplemental response to motions for summary judgment, it did not deliver a certified copy of the assignment to Duke until November 8, 2002. Our review of the record reveals that Northern delivered a certified copy of the assignment to Duke four days *after* the trial court ruled that the C & O Agreement, PSA, and Assignment and Conveyance were unambiguous and only five days before the trial court signed the order granting summary judgment. Northern made the trial court aware of its compliance with the notice requirement in its motion for new trial filed on December 9, 2002. Thus, there was no competent summary judgment evidence showing that Northern had complied with Section XII of the C & O Agreement at the time the trial court granted summary judgment.

---

1. Duke responds, in part, that the EPGI assignment does not comply with all of the C & O Agreement's requirements, and consequently, is invalid. Given our resolution of Northern's contentions regarding the assignment, it is unnecessary to address this additional argument.

Northern argues, without citing any authority, that it is entitled to prove before a jury that Mobil had actual knowledge of the assignment. Although Northern made the trial court aware of the 1995 EPGI assignment in a supplemental response to the summary judgment motions, it did not raise the actual knowledge argument until its motion for new trial. All of the evidence it relies upon to raise this fact issue was attached to Northern's motion for new trial. Because it does not allege that it is newly discovered evidence, Northern is not permitted to create a fact issue in a motion for new trial that should have been raised in a response to a motion for summary judgment. *See Risner v. McDonald's Corporation,* 18 S.W.3d 903, 909 (Tex.App.-Beaumont 2000, pet. denied)(noting a party may not present additional evidence in a motion for new trial unless such evidence is newly discovered).

## POST-LITIGATION CHANGE IN CIRCUMSTANCES

Northern finally complains that Duke has implemented a plan to operate the Coyanosa Facility as a "paper plant" rather than closing it completely. In December 2001, Northern learned that Duke had proposed a plan to reduce operations and associated costs at the Coyanosa Facility by moving the gas treating operations to another facility. Northern contends that this "change in circumstances ... precludes summary judgment because a fact finder must determine that the parties had such an intent at the time the 1977 transactions were entered into." Northern has not provided any citation of authority to support its argument and has therefore waived any error. TEX.R.APP.P. 38.1(h); *Walton v. Phillips Petroleum Co.,* 65 S.W.3d 262, 276 (Tex.App.-El Paso 2001, pet. denied); *City of Midland v. Sullivan,* 33 S.W.3d 1, 17 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.). For all of the foregoing reasons, we overrule Issue Two. Having overruled both issues presented on appeal, we affirm the trial court's judgment.