Nancy L. JACOBSON and Joseph
Jacobson, Appellants

v.

DP PARTNERS LIMITED PARTNER-
SHIP, T & J Partners Limited Part-
nership, T & J GP, Inc., Oxford Enter-
prises, Inc., Hannah Limited Liability
Company, Anthony Swartz, and Jo-
seph Melton, Appellees.

No. 05–06–01327–CV.

Court of Appeals of Texas,
Dallas.

Jan. 29, 2008.

Luke Madole, Carrington, Coleman, Sloman & Blementhal, Dallas, TX, for Appellant.

Robert M. Hoffman, Gardere, Wynne, and Sewell, L.L.P., Dallas, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice WHITTINGTON.

The trial judge granted summary judgment in favor of appellees and severed the claims adjudicated in the summary judgment proceeding into a separate cause. In nine issues, appellants contend the trial judge erred in granting the summary judgment. The issue presented is whether appellee DP Partners Limited Partnership is obligated to appellants under a Modification Agreement dated September 11, 1993, and signed by each of its partners. We hold DP has no contractual obligation to appellants under the Modification Agreement as a matter of law, and affirm the trial court's judgment.

## Background

Appellants claim the Modification Agreement requires DP to pay them a share of the proceeds from a sale or refinancing of five apartment complexes owned by DP. The parties to the Modification Agreement were MiTex Partners I,[1] BH Associates Limited Partnership, and SB/DP Participation Corp. MiTex, BH, and SB/DP were the partners of DP Part-

ners, a Michigan co-partnership and the predecessor of appellee DP. Appellant Joseph Jacobson was a partner of JG Financial Management Services; JG in turn was a partner of MiTex. Through various subsequent assignments, appellants succeeded to JG's interests. However, the interest they claim in this appeal is not through MiTex or JG, but rather through SB, as the result of a different set of assignments.

The Modification Agreement recites that MiTex, BH, and SB were the sole general partners in DP Partners under a partnership agreement dated May 1, 1990; MiTex and BH "owe certain monetary obligations to or for the benefit of SB" under the partnership agreement; SB has demanded payment; and MiTex and BH assert the obligations are not yet due and payable. The agreement further recites, "The parties desire to resolve their differences on the terms described below."

In paragraphs 1 and 2 of the Modification Agreement, MiTex and BH acknowledge they would be required to pay SB the amount of $2,903,269 under the partnership agreement, and MiTex and BH each promise to pay half of that sum to SB. This obligation, referred to by appellants as the "deficit funding obligation" or DFO, does not appear to be in dispute.

The disputed obligation arises out of paragraph 4 of the Modification Agreement. The obligation, referred to by appellants as the "internal rate of return" or IRR, arises out of a promise made to SB in the 1990 partnership agreement. In

---

1. The Modification Agreement reflects MiTex assigned its interest in DP to Sussex Properties, Inc., a Texas corporation. The parties argue about the significance of this assignment. Appellees argue that because of the assignment, not all partners of DP were parties to the Modification Agreement. In various sections of their briefs, appellants argue

both that Sussex was a party and not MiTex, and that MiTex was a party and not Sussex. For purposes of this appeal, viewing all evidence in favor of the non-movant on summary judgment, we will assume without deciding that all of the partners of DP were parties to the Modification Agreement.

that agreement, SB was promised a twenty percent rate of return after it recouped its original investment. Appellants contend that they, standing in the shoes of SB, are entitled under the Modification Agreement to a twenty percent rate of return on SB's investment. Appellants further contend that in the Modification Agreement, the DP partnership undertook to pay them this obligation. Appellants rely on the following language from paragraph 4 of the Modification Agreement as the basis for their claim DP is obligated to SB:

> If at any time a sale of one or more of the Properties or a refinancing of the mortgages on one or more of the Properties produces net cash proceeds available for distribution in excess of $2,903,269, then MiTex and BH shall share such excess proceeds with SB. The term net cash proceeds shall mean and include all cash, notes, bonds, stocks, promises to pay and other non-cash consideration received by the Partnership. All net cash proceeds as defined above shall be immediately distributed. * The sharing shall be as follows: (i) First, BH and MiTex shall receive an amount which, when added to all of the Partnership distributions theretofore received by them from the Partnership, is equal to all of the capital contributions theretofore made by them to the Partnership; ... (ii) Second, SB shall receive an amount which is equal to the twenty (20%) percent internal rate of return which SB was to receive from Excess Cash attributable to Net Sale or Refinancing Proceeds pursuant to the Partnership Agreement after taking into account the $2,903,269 paid to SB as aforesaid; (iii) The balance shall be retained seventy (70%) percent by BH and MiTex, and thirty (30%) percent by SB....

The parties also added the following language to be inserted in paragraph 4 at the asterisk:

> The obligations of Mitex and BH to share net proceeds with SB shall be several and not joint, each as to an undivided one-half of SB's share. That is, Mitex shall be obligated to share with SB the net proceeds otherwise available to Mitex, as to one-half of such obligation and BH shall be obligated to share with SB the net process otherwise distributable to BH, as to one-half of such obligation.

DP was subsequently reorganized in bankruptcy, and appellees are the current DP partnership and its partners. Appellants claim appellees have received proceeds from the sale or refinancing of properties owned by DP, but have failed to pay appellants any portion of the proceeds as required by the Modification Agreement.

In the proceedings below, DP brought suit against Nancy Jacobson for a judgment declaring she has no interest in DP's assets. Appellants counterclaimed, asserting causes of action for fraud, negligent misrepresentation, conversion, breach of contract, and anticipatory repudiation, and sought a declaratory judgment, damages, a constructive trust, and an equitable lien. Appellees moved for summary judgment on the ground that the Modification Agreement did not provide appellants with any right or interest of any kind in DP or its assets or create any obligation to appellants by DP. Only the severed claims adjudicated in the summary judgment proceeding are before us in this appeal.

### Standard of Review

We review a summary judgment de novo to determine whether a party has established its right to summary judgment as a matter of law. *See Dallas Cent. Appraisal Dist. v. Cunningham,* 161

S.W.3d 293, 295 (Tex.App.-Dallas 2005, no pet.). A party moving for a traditional summary judgment must show no material fact issue exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cunningham*, 161 S.W.3d at 295. The movant bears the burden of proof and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). All evidence and any reasonable inferences must be viewed in the light most favorable to the non-movant. *Nixon*, 690 S.W.2d at 548–49.

### Discussion

The interpretation of an unambiguous contract is a question of law. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999). The parties' intent must be taken from the agreement itself and the agreement must be enforced as written. *Wells Fargo Bank, Minnesota, N.A. v. North Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App.-Dallas 2006, pet. denied). A court must favor an interpretation that affords some consequence to each part of the agreement so that none of the provisions will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). No single provision taken alone will be given controlling effect. *Coker*, 650 S.W.2d at 393. All provisions of a contract must be considered with reference to the entire instrument. *Coker*, 650 S.W.2d at 393.

If a contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393. A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650

S.W.2d at 393–94. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker*, 650 S.W.2d at 394. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394. An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex.2000). Parol evidence is not admissible to render a contract ambiguous, which on its face, is capable of being given a definite legal meaning. *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (parol evidence not admissible for purpose of creating ambiguity); *see also Wagner v. Compass Bank*, 170 S.W.3d 220, 223 (Tex.App.-Dallas 2005, no pet.) (affidavit submitted to show intent of parties not admissible where contract unambiguous). Parol evidence that varies or contradicts the express terms of the written agreement is not admissible. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 n. 1 (Tex.1996) (quoting *National Union*, 907 S.W.2d at 521).

As we stated in *Calpine Producer Services, L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex.App.-Dallas 2005, no pet.):

> The court should consider that the "intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as it is written." This is often referred to as the "Four Corners Rule" which means that the intention of the parties is to be

ascertained from the instrument as a whole and not from isolated parts thereof. Moreover, a court will not change the contract merely because it or one of the parties comes to dislike its provisions or thinks that something else is needed. The court will not "ask about the subjective intent of the parties to the contract." When the contract is unambiguous, the court should apply the pertinent rules of construction, apply the plain meaning of the contract language, and enforce the contract as written.

169 S.W.3d at 787 (citations omitted).

██ Appellants argue there are genuine issues of material fact "as to whether the Modification Agreement is a partnership obligation or otherwise enforceable against the DP Group." Appellees' summary judgment motion was premised on the contention that "the Modification Agreement does not obligate DP Partners Group to Jacobson, or provide Jacobson with any rights or interests of any kind in DP Partners or its assets," for a number of reasons. Appellees argued "the Modification Agreement states on its face that it is merely a promise to pay by two individual entities-MiTex and BH-not DP Partners." Appellees also argue MiTex was no longer a partner of DP at the time the Modification Agreement was signed, and the general partner of DP at the time, Sussex, was not a party to the Modification Agreement. As noted above, appellants argue at length about whether Sussex or MiTex was the actual party to the Modification Agreement. Appellants apparently contend that if all partners are parties to a contract, that contract necessarily binds the partnership to any obligation undertaken by one of the individual partners to another, regardless of the language of the contract. Appellants cite no authority for this proposition.

Even assuming all partners of DP were parties to the Modification Agreement, the agreement itself does not contain a promise by DP to pay the amounts appellants claim. Instead, it obligates two partners to share proceeds with the third: "If at any time a sale of one or more of the Properties or a refinancing of the mortgages on one or more of the Properties produces net cash proceeds available for distribution ... then MiTex and BH shall share such excess proceeds with SB." Other language in the Modification Agreement also indicates the obligations undertaken were by MiTex and BH, not the partnership. Paragraph C of the recitals notes, "MiTex and BH owe certain monetary obligations to or for the benefit of SB ...". Paragraph 1 describes "the amount which MiTex and BH would be required to pay SB ...". Paragraph 2 contains the promise to pay: "MiTex and BH each promise to pay to the order of SB $1,451,634.50 and its share of the amount described in Paragraph 4 below." Paragraph 2 also notes that the "several obligation of MiTex" and the "several obligation of BH" have been guaranteed by named individuals. Paragraph 6 recites that "SB accepts the promises made herein in complete and final satisfaction of the obligations of BH and MiTex under Section 2.02 of the Partnership Agreement." The parties also inserted language in paragraph 4 that the obligations of MiTex and BH to share net proceeds with SB were "several and not joint, each as to an undivided one-half of SB's share." None of this language indicates the parties intended the obligations created in the Modification Agreement to be obligations of the partnership.

Appellants also argue the "unified transaction" doctrine requires six agreements to be read together to determine the parties' intent. Appellants cite *Fort Worth Independent School District v. Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000), in which the

supreme court noted that instruments pertaining to the same transaction may be read together to ascertain the parties' intent. *See also In re Prudential Ins. Co. of America,* 148 S.W.3d 124, 135 (Tex.2004) (agreements executed at same time, with same purpose, and as part of same transaction, are construed together). The Modification Agreement and four of the other documents relied on by appellants are all dated September 11 or 12, 1993; the sixth is dated June 25, 1993. Three of these documents (Agreement for Sale of Partnership Interest, Purchase Money Note, and Pledge) deal with assignments and financing between Sussex and MiTex. The fourth is a new partnership agreement between Sussex and BH. The fifth is a Redemption Agreement between DP and SB. The sixth is the Modification Agreement itself. Assuming the "unified transaction" doctrine applies, however, we do not agree with appellants that the partnership undertook an obligation to SB.

Although appellants argue the effect of the six documents was to retain the obligation under the 1990 partnership agreement for the partnership to pay SB an internal rate of return of 20%, they do not point to any language in any of the five other documents that includes such a provision. In fact, the documents suggest that when the parties to the transactions intended to create partnership obligations, they did so explicitly. In the Redemption Agreement, for example, DP is a named party. Throughout, where DP undertakes an obligation, the agreement reads, "The Partnership hereby redeems its interest ...."; "the Partnership shall pay"; and "The Partnership hereby agrees to defend...." In addition to the Redemption Agreement's specific language regarding the partnership's obligations, it contains a release:

> The Partnership for itself and for the remaining partners, BH and Sussex, hereby release and acquit SB from all claims, liabilities, costs, damages and expenses arising under the Partnership Agreement. SB hereby releases and acquits BH, Sussex and the Partnership from all claims, liabilities, damages, costs and expenses arising under the Partnership Agreement. Notwithstanding the foregoing, nothing contained herein shall release SB, BH, and MiTex Partners I (a former partner in the Partnership) from their mutual obligations arising under that certain Modification Agreement executed of even date herewith.

The language of the release, preserving the obligations of SB, BH, and MiTex under the Modification Agreement, but specifically releasing all claims between the partnership and SB, further indicates the parties intended by the language of the Modification Agreement to address obligations among MiTex, BH, and SB, but not the partnership.

The six documents also include a Pledge of Partnership Interest and Security Agreement under which Sussex assigned its interest in the partnership to MiTex. Appellants argue this pledge demonstrates MiTex had the authority to bind the partnership to pay distributions ("This revealed MiTex as the holder of legal title to the distributions attributable to the pledged partnership interest in DP and evidenced yet another structural ability and power vested in MiTex to bind those distributions to pay the IRR [SB's 20% internal rate of return]."). Assuming MiTex did have the "structural ability and power," however, the question becomes whether it did, in fact, make a promise in the Modification Agreement that the partnership undertook an obligation to pay any party any particular amount. The language of the Modification Agreement is to the contrary.

Accompanying the Pledge are the Agreement for Sale of Partnership Interest and the Purchase Money Note, both between Sussex and MiTex. Appellants explain MiTex assigned its partnership interest in DP to Sussex, and Sussex signed a note in favor of MiTex, secured by the pledge of Sussex's partnership interest back to MiTex. Appellants argue these assignments bound Sussex to the 1990 partnership agreement, and Sussex was thus bound to pay SB the 20% internal rate of return promised in the 1990 agreement. However, language in the sixth document, the Limited Partnership Agreement of DP Partners Limited Partnership, suggests otherwise. In the Limited Partnership Agreement, between Sussex and BH, although the new limited partnership was to continue the business of the 1990 partnership uninterrupted, the 1990 agreement was "superceded and supplanted, in its entirety, by this Agreement." Although appellants note that in the Limited Partnership Agreement, Sussex and BH "ratify and affirm all actions heretofore taken, and all documents executed" with respect to DP, they do not point to language in this sixth agreement in which the new partnership undertakes or continues the obligation to pay SB any amount. Rather, the obligation to SB is addressed in the Modification Agreement.

Appellants also cite to a letter agreement dated April 21, 1994 (reciting an effective date of September 11, 1993), and argue the letter agreement clarifies that "MiTex was, cleanly and apart from the Agreement For Sale/Note/Pledge structure, able to bind its partnership interest in DP to the Modification Agreement before any assignment to Sussex." Like the other agreements, however, there is no promise by the partnership to pay SB the IRR. The primary purpose of the letter appears to be to obtain the approval of Chateau Estates, an interest holder inadvertently omitted from the September 11, 1993 documents ("This agreement has been made in consideration of the understanding of the parties that the transfer of the Interest by MiTex Partners I to Sussex was done inadvertently and without the authority of Chateau Estates.").

▮ The language of the documents taken together indicates the parties intended to preserve the IRR through the Modification Agreement by payment from MiTex and BH, while the partnership going forward would operate under the new agreement, pursuant to the agreements between MiTex and Sussex about how the partnership would be owned and managed. The summary judgment affidavit of Joseph Jacobson contradicting the express provisions of the agreement ("Indeed, the Modification Agreement was part of an effort to guide DP Partners through an anticipated bankruptcy without discharging or releasing the obligations of DP Partners and its partners to pay the 20% internal rate of return owed to [SB] (and its successors and assigns) generated from sale or refinancing of the Properties. This certainly was my intent in executing the Modification Agreement on behalf of MiTex and, from their discussions with me, the mutual intent of all signatories.") is inadmissible parol evidence. *See National Union*, 907 S.W.2d at 521. We hold the Modification Agreement was not ambiguous, and there were no genuine issues of material fact precluding summary judgment that the Modification Agreement was not a partnership obligation. We overrule appellants' first three issues.

Because we hold the Modification Agreement was not a partnership obligation as a matter of law, we need not discuss appellants' issues four through seven, regarding whether appellees established their affirmative defenses to appel-

lants' counterclaim for breach of contract as a matter of law. We also need not address appellants' issue eight, as it is contingent on our holding the Modification Agreement is a partnership obligation.

In their ninth issue, appellants ask, "Did the summary judgment evidence conclusively establish, to the exclusion of any genuine issue of material fact, that not one of the DP group is a party to the Modification Agreement or a successor or assign of any party thereto?" Assuming, however, that the obligations of one of the parties to the Modification Agreement became the obligations of one or more of the appellees through assignment, the unambiguous language of the Modification Agreement is that MiTex and BH, not the partnership, will pay SB. MiTex's obligations under the Modification Agreement were "to share with SB the net proceeds otherwise available to MiTex, as to one-half of such obligation," and BH's obligations were the same. There is no provision binding the partnership to fulfill any obligation to SB. If appellees are successors to MiTex or BH, then they may have an obligation to fulfill MiTex's or BH's promises to SB under the Modification Agreement, but that issue was neither presented nor decided in the summary judgment proceedings we review here. We overrule appellants' ninth issue.

We affirm the trial court's judgment.