# NO. 12-07-00393-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| **JESSIE JOHNSON AND WIFE,** **ILA STEEL JOHNSON,** **APPELLANTS** | § | *APPEAL FROM THE SEVENTH* |
| **V.** | § | *JUDICIAL DISTRICT COURT OF* |
| **TOM CONNER AND WIFE,** **LISA CONNER,** **APPELLEES** | § | *SMITH COUNTY, TEXAS* |

### *OPINION*

In their suit for reformation of a deed, Jessie Johnson and Ila Steel Johnson, who sold property to Tom Conner and Lisa Conner, appeal the trial court's order granting summary judgment in favor of the Conners. In one issue, the Johnsons contend that the trial court erred in granting summary judgment because there were disputed fact issues regarding their claim of mutual mistake in the execution of the deed. We affirm.

### BACKGROUND

The Johnsons listed forty acres of land that they owned near Whitehouse in Smith County with real estate agent Elaine Burgess. Burgess showed the property to the Conners. She later drew up a farm and ranch contract on a printed form promulgated by the Texas Real Estate Commission, which was signed by both the Johnsons and the Conners. Under the relevant section for the issue before us, the contract in its printed form said as follows:

> **RESERVATIONS: Seller reserves the following mineral, water, royalty, timber, or other interests:**

Burgess, on the blank line below that statement, wrote by hand the following:

**None of the above are available to be conveyed.**

The deed conveying the property, which was prepared based on the terms of this contract, contained the following clause:

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:
This conveyance is made and accepted subject to the following matters, to the extent same are in effect at this time:

Any and all easements, rights of way, and prescriptive rights, whether of record or not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens and conveyances, that affect the property, rights of adjoining owners in any walls and fences situated on a common boundary; any discrepancies, conflicts or shortages in area or boundary line; any encroachments or overlapping of improvements; taxes for 2004, the payment of which Grantee assumes, and subsequent assessments for that and prior years due to change in land usage, ownership or both, the payment of which Grantee assumes.

Immediately following this section of the deed, the granting clause provides that

Grantor, for the consideration hereinbefore stated and subject to the reservations from and exceptions to conveyance and warranty, stated herein, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging to have and hold it to Grantee.

The Johnsons signed the deed at closing. Less than two years later, the Johnsons learned that the Conners were receiving payments under an oil and gas lease the Conners had executed on the forty acres. The Johnsons subsequently brought suit against the Conners asking the trial court to reform the deed conveying the land to the Conners because the deed did not reflect the provisions of the contract. The Conners filed a traditional motion for summary judgment in which they argued that the deed was unambiguous and conveyed all of the estate owned by the Johnsons at the time they signed it. As their only summary judgment evidence, they attached a copy of the deed. In their response, the Johnsons argued that the sales contract stated that no minerals were being conveyed, they thought they were signing a deed that reserved to them their minerals, and the Conners thought

2

they were obtaining no minerals.  Therefore, they alleged, the deed was not in compliance with the contract and was executed by mutual mistake.  As summary judgment evidence, they presented the affidavit of Elaine Burgess and the sales contract. The trial court granted the Conners' motion for summary judgment, finding that the deed the Johnsons signed was unambiguous and conveyed all of their estate in the land, including their mineral interest.  This appeal followed.

## SUMMARY JUDGMENT

In their sole issue, the Johnsons contend that the trial court erred in granting summary judgment in favor of the Conners because they raised a fact question on the issue of mutual mistake in the execution of the deed.  They contend, therefore, that they are entitled to reformation.

### Standard of Review

We review the trial court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  The movants for traditional summary judgment must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovants, and we indulge every reasonable inference and resolve any doubts in the nonmovants' favor.  *Valence Operating Co.*, 164 S.W.3d at 661.  When defendants move for summary judgment, they must negate at least one essential element of the nonmovants' cause of action or prove all essential elements of an affirmative defense.  *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).  Once the movants establish their right to summary judgment as a matter of law, the burden shifts to the nonmovants to present evidence raising a genuine issue of material fact, thereby precluding summary judgment.  *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).  Evidence is conclusive only if reasonable people could not differ in their conclusions.  *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

### The Deed

Whether a deed is ambiguous is a question of law for the court, which we review de novo. *Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 599 (Tex. App.–Eastland 2005, no pet.).  The primary duty of a court when construing a deed is to ascertain the intent of the parties from all of the language in

3

the deed by the fundamental rule of construction known as the "four corners" rule. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The intent that governs, however, is not the intent that the parties meant but failed to express but, rather, the intent that is expressed. *Roosth*, 158 S.W.3d at 599. If a written instrument is worded in such a way that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980). A deed will be construed to confer upon the grantee the greatest estate that the terms of the instrument will permit. *See Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963); *McMillan v. Dooley*, 144 S.W.3d 159, 185 (Tex. App.–Eastland 2004, pet. denied); *see also Jasper State Bank v. Goodrich*, 107 S.W.2d 600, 602 (Tex. Civ. App.–Beaumont 1937, writ dism.w.o.j.) ("[T]he law can indulge the presumption that the grantor 'intends to convey the tract to which he has title' . . . when that presumption does not do violence to the language of the deed."). A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions that reduce the estate conveyed. *Sharp v. Fowler*, 151 Tex. 490, 493, 252 S.W.2d 153, 154 (Tex. 1952); *Cockrell v. Tex. Gulf Sulfur Co.*, 157 Tex. 10, 15, 299 S.W.2d 672, 675 (Tex. 1956); *Lewis v. Midgett*, 448 S.W.2d 548, 551 (Tex. Civ. App.–Tyler 1969, no writ). *See also Melton v. Davis*, 443 S.W.2d 605, 608 (Tex. Civ. App.–Tyler 1969, writ ref'd n.r.e.) (Held that if appellees had intended to reserve the disputed minerals, they could have done so by apt language specifically and unequivocally expressing such intent; having failed to do so, title to the mineral estate in question passed to appellants under the deed.).

The reservations clause of the deed indicates that the Johnsons sold the property subject to, among other matters, "all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments . . . that affect the property." The granting clause conveyed to the Conners the property and all rights the Johnsons had in the property. *See Cockrell*, 157 Tex. at 15, 299 S.W.2d at 675. The deed did not explicitly reserve the mineral rights. *See Melton*, 443 S.W.2d at 608. The trial court correctly determined that the language used in the deed signed by the Johnsons in conveying the forty acres to the Conners was unambiguous, they did not reserve the minerals, and they conveyed all of the estate they owned at the time they executed the deed in favor of the Conners. Therefore, the trial court correctly found that the Conners established their right to summary judgment as a matter of law based on the deed. The burden then

4

shifted to the Johnsons to present evidence raising a fact question. ***City of Houston***, 589 S.W.2d at 678-79.

**The Contract**

Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. ***Coker v. Coker***, 650 S.W.2d 391, 394 (Tex. 1983). If a contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. ***Id.*** at 393. When construing a contract, the parties' intent must be taken from the agreement itself and the agreement must be enforced as written. ***Jacobson v. DP Partners Ltd. P'ship***, 245 S.W.3d 102, 106 (Tex. App.–Dallas 2008, no pet.).

In her affidavit, Burgess stated that, when they listed the property, the Johnsons "were very emphatic" that "they were not selling their minerals, which they owned." She said that when she showed the property to the Conners, she told them the Johnsons were not selling any of their minerals and thus no minerals were to be conveyed. She stated that the offer to purchase was made with the knowledge that the Johnsons were to retain the minerals. She explained that she added the wording under the "Reservations" section in the contract to clarify that the Johnsons were keeping their minerals. She said that when the contract was ready to be signed, she reiterated to Mr. Conner that the Johnsons were not selling their minerals. Burgess stated that at closing she thought the Johnsons' minerals had been reserved. She further explained that, in 2006, she learned that the deed did not reserve the minerals so she had a correction deed drawn up.

Burgess, in her affidavit, attempted to create an ambiguity stating that the language she used in the contract meant that the Johnsons were reserving their minerals. However, when Burgess had an opportunity to state in the "Reservations" section of the contract that the minerals were being reserved, she wrote "none of the above are available to be conveyed." We afford the words contained in the agreement their plain, ordinary, and generally accepted meaning, unless the instrument requires otherwise. ***Natural Gas Clearinghouse v. Midgard Energy Co.***, 113 S.W.3d 400, 407 (Tex. App.–Amarillo 2003, pet. denied). The operative word Burgess used in the contract was "available," which means "present and ready for use, on hand, accessible." AMERICAN HERITAGE COLLEGE DICTIONARY 94 (3d ed. 2000). This language, on its face, means that the

Johnsons did not have any minerals to convey to the Conners. That is the only reasonable interpretation of the language used by Burgess in the contract. Burgess's interpretation of the language in the contract, as explained in her affidavit, is not reasonable. An ambiguity does not arise simply because the parties advanced conflicting interpretations of the contract; rather for an ambiguity to exist, both interpretations must be reasonable. *Jacobson*, 245 S.W.3d at 106. Parol evidence is not admissible to render a contract ambiguous that, on its face, is capable of being given a definite legal meaning. *Id.*

A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written contract does not reflect the intention of the parties due to a mutual mistake. *N. Natural Gas v. Chisos Joint Venture I*, 142 S.W.3d 447, 456 (Tex. App.–El Paso 2004, no pet.). In order for the affirmative defense of mutual mistake to be sustained on summary judgment, the defendants must raise fact issues showing that the contracting parties were acting under the same misunderstanding of the same material fact. *Id.* Where it is alleged that by reason of mutual mistake, an agreement does not express the real intentions of the parties, extrinsic evidence is admissible to show the real agreement. *Id.*

A mutual mistake asserting a material fact constitutes a ground for avoiding a contract, but the mistake must be mutual rather than unilateral. *Holley v. Grigg*, 65 S.W.3d 289, 295 (Tex. App.–Eastland 2001, no pet.). When seeking relief from a mutual mistake, the parties seeking reformation must of course prove what the true agreement was, but their case is not made by proof that there was an agreement which is at variance with the writing. *Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273, 275 (Tex. 1970). They must go further and establish the fact that the terms or provisions of the writing that differ from the true agreement made were placed in the instrument by mutual mistake. *Id.* We are further reminded by our supreme court that the doctrine of mutual mistake must not routinely be available to avoid the results of an unhappy bargain. *Williams v. Glash*, 789 S.W.2d 261, 265 (Tex. 1990).

The Johnsons, in their response to the Conners' motion for summary judgment, argued that the contract stated that no minerals were being conveyed and the deed, which was not in compliance with the contract, was executed by mutual mistake. The Johnsons specifically stated they believed they were reserving their minerals in the forty acres when they signed both the real estate contract

and the deed. Burgess, according to her affidavit attached to their response, also thought the Johnsons were reserving their minerals and emphasized that fact to the Conners.

The Conners each filed an affidavit in reply to the Johnsons' response to the motion for summary judgment. In contrast to the Johnsons, the Conners denied that any discussions about mineral interests ever took place and stated that they thought they were purchasing 100% of whatever the Johnsons owned. This is not inconsistent with the language in the contract that no minerals were available to be conveyed. The Conners were entitled to assume under the contract that they would be receiving all of the estate that the Johnsons owned.

The parties thus had different understandings about the mineral estate. The Johnsons believed the deed should contain a reservation clause reserving their minerals from the conveyance. The Conners believed the deed accurately reflected the status of the mineral title since it only mentioned the minerals that were already reserved of record.

No probative summary judgment evidence established that the parties had the same misunderstanding about whether the mineral estate was to be conveyed. For a mutual mistake to exist, there must be the same mistaken belief or assumption in the minds of the grantors and grantees named in the deed. *See* ***Holley***, 65 S.W.3d at 295. Two separate unilateral mistakes in the minds of the grantors and grantees do not create a factual issue for a mutual mistake cause of action. The Johnsons did not meet their burden to present evidence raising a genuine issue of material fact to preclude summary judgment. *See* ***City of Houston***, 589 S.W.2d at 678-79. We overrule the Johnsons' sole issue.

## DISPOSITION

Because the Conners proved their entitlement to summary judgment as a matter of law and the Johnsons failed to raise a genuine issue of material fact, we ***affirm*** the judgment of the trial court.

    **JAMES T. WORTHEN**
Chief Justice

Opinion delivered July 9, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7