Opinion issued July 16, 2009 















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00415-CV

__________


STEVEN POOCK AND DAVID EDWARDS, Appellants


V.


WASHINGTON MUTUAL BANK, F.A. AND HARRY HERZOG, Appellees






On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 2007-01009






MEMORANDUM OPINION

 Appellant, David Edwards, challenges the trial court's rendition of summary
judgment in favor of appellees, Washington Mutual Bank, F.A. and Harry Herzog,
in Washington Mutual's suit against Edwards for an order and declaration of
recission of a release of a lien Washington Mutual held against Edwards's real
property located in Fort Bend County. Additionally, Edwards and his attorney,
appellant, Steven Poock, challenge the trial court's order imposing sanctions against
them for engaging in "malicious and unwarranted conduct, in bad faith, for purposes
of harassing" Herzog in the trial court. 

 In the first, second, fourth, and seventh issues, Edwards contends that the trial
court erred in declaring that "Edwards's homestead was secured by a prior judgment
debt for attorney's fees," thus, "paving the way for foreclosure of Edwards's
homestead for an unsecured debt," ordering the "'recission' of the release" of
Washington Mutual's lien based upon Washington Mutual's "mistake," rejecting
Edwards's "affirmative defenses [of] payment, waiver, and accord and satisfaction,"
and granting summary judgment in favor of Washington Mutual on Edwards's claims
for "filing a fraudulent lien," breach of contract, and "constitutional violations." In
the third, fifth, and sixth issues, Edwards contends that the trial court erred in
granting summary judgment in favor of Herzog on Edwards's claims for "filing a
fraudulent lien," "debt collection violations," and violations of the Texas Deceptive
Trade Practices Act. In the eighth issue, Edwards and Poock contend that the trial
court abused its discretion in granting Herzog's motion for sanctions. In the ninth
issue, Edwards contends that the trial court erred in denying his motion to transfer
venue of the case from Harris County to Fort Bend County. 

 We reverse the judgment of the trial court and remand the case with
instructions to transfer venue of the case from Harris County to Fort Bend County. Factual and Procedural Background

 On May 7, 2003, Edwards obtained from Washington Mutual a home equity
loan for $80,000, which was evidenced by a promissory note and secured by a
security instrument on Edwards's real property located in Fort Bend County. 
Paragraph 1 of the security instrument provided that Edwards, in consideration for the
loan, granted and conveyed his real property, as well as any further "interest" in the
real property he obtained, to Washington Mutual, in trust, with the power of sale. 
Paragraph 2 provided that the security instrument secured payment of the loan as well
as "certain fees and costs" of Washington Mutual provided by paragraph 9, which
stated,

 9. Fees and Costs. [Edwards] shall be responsible for shall pay
[sic] all of [Washington Mutual's] lawfully permitted costs and
collection charges, including, without limitation, reasonable attorney's
fees, reasonable trustee's fees or charges in connection with this
Security Instrument or similar instrument in connection with the Loan,
fees for enforcing the lien or posting for sale, selling or releasing the
Property, courts costs, and any other lawfully permitted fees or charges,
subject to legal limits. . . . 


Paragraph 10 provided that, within a reasonable time after termination and full
payment of the loan, Washington Mutual would cancel and return the promissory note
to Edwards and give to Edwards, in recordable form, a release of the lien granted by
the security instrument. Paragraph 12 provided that "all payments received by
[Washington Mutual] may be applied: first, to amounts payable under [paragraph] 6;
second, to [Washington Mutual's] lawfully permitted fees and costs; third, to interest
due; and last, to principal due." (Emphasis added.)

 Subsequently, in 2003, Edwards brought suit against Washington Mutual for
alleged violations of the Texas Constitution (referred to herein as the "prior lawsuit")
and claimed that he had not received the loan closing documents. Washington
Mutual, in its answer, alleged that Edwards had received copies of his loan
documents and requested that the trial court award it its costs and attorney's fees
pursuant to the promissory note and security instrument. On April 28, 2006, the trial
court, in this prior lawsuit, entered a final judgment in favor of Washington Mutual,
ordered that Edwards take nothing on his claims, and awarded Washington Mutual
$55,800 for its reasonable and necessary attorney's fees as well as court costs. In its
findings of fact, the trial court found Edwards's testimony not credible, unpersuasive,
and, in part, "factually impossible." The trial court further found that Edwards was
responsible for the payment of Washington Mutual's attorney's fees expended to
enforce its lien. In its conclusions of law, the trial court concluded that Washington
Mutual was entitled to recover its attorney's fees pursuant to paragraph 9 of the
security instrument.

 After the trial court entered its final judgment in the prior lawsuit, Washington
Mutual furnished Edwards with a pay-off statement reflecting the outstanding
amounts of principal and interest due on the loan. It is undisputed that this pay-off
statement did not include the attorney's fees awarded to Washington Mutual by the
trial court. Pursuant to the pay-off statement, Edwards paid off the stated outstanding
amounts. Following Edwards' pay-off of the loan, Washington Mutual, on July 25,
2006, prepared and filed a release of its lien on Edwards's property in the real
property records of Fort Bend County. The release, which described Washington
Mutual as the "owner of the beneficial interest under a certain Deed of Trust,"
acknowledged that Washington Mutual had received full payment and satisfaction of
the loan and that, in consideration, Washington Mutual reconveyed the "estate, title,
and interest now held by it under said Deed of Trust in Fort Bend County. . . ."
(Emphasis added). 

 On August 7, 2006, Herzog, the attorney for Washington Mutual in the prior
lawsuit, discovered the filing of the release, which he considered to be erroneous. 
Herzog drafted an affidavit and filed it in the Fort Bend County real property records. 
In this affidavit, he stated that he was the attorney for Washington Mutual in the prior
lawsuit, the prior lawsuit involved the enforcement of a lien held by Washington
Mutual on Edwards's property pursuant to a security instrument, and the trial court
in the prior lawsuit had awarded Washington Mutual $55,800 for its attorney's fees. 
Herzog further stated that the trial court had entered a conclusion of law providing
that Washington Mutual was entitled to recover its attorney's fees incurred in defense
of the prior lawsuit pursuant to the security instrument. Herzog also referenced
paragraph 12 of the security instrument, which provided that all payments received
by Washington Mutual "may be applied" to pay off Washington Mutual's lawfully
permitted fees and costs prior to the payment of any interest or principal. Herzog
averred that Washington Mutual had mistakenly given the release, Washington
Mutual was still owed the attorney's fees, and these amounts remained secured by the
security instrument. Herzog further stated,

 A Release of Lien was mistakenly given and filed of record under
Fort Bend County Clerk's file number 200609526 purporting to release
the [security instrument] lien against the Property but the sum of
$55,800 plus any legally chargeable interest or other costs or fees
remains owing to Washington Mutual and secured by the [security
instrument] against the Property. This Release of Lien and any other
release of lien from Washington Mutual pertaining to the Property and
dated prior to the date of this Affidavit were mistakenly given and are
hereby withdrawn and may not be relied upon by anyone.


 THEREFORE, ALL PARTIES ARE PLACED ON AND
REMAIN ON NOTICE THAT UNTIL ALL AMOUNTS OWING
UNDER THE [SECURITY INSTRUMENT] TO WASHINGTON
MUTUAL, INCLUDING, BUT NOT LIMITED TO, THE ABOVE
DESCRIBED FEES AND COSTS, ARE PAID IN FULL, THE LIEN
EVIDENCED BY THE [SECURITY INSTRUMENT] AGAINST THE
PROPERTY REMAINS IN FULL FORCE AND EFFECT AND SUCH
LIEN MAY ONLY BE RELEASED BY A RELEASE DATED AFTER
THE DATE OF THIS AFFIDAVIT.


 Washington Mutual, on August 9, 2006, also filed a document titled "Recission
of Release of Lien" in the Fort Bend County real property records, acknowledging
that it erroneously released Edwards from his obligation under the security
instrument. It further stated that it had unilaterally executed and recorded the release
in error, it was not lawfully empowered to cause the execution and recording of the
release, and it was rescinding the erroneous release. 

 On January 9, 2007, Washington Mutual brought the instant suit against
Edwards in Harris County. In its original petition, Washington Mutual alleged that
Edwards had engaged in a "second scheme" by contacting Washington Mutual to
"obtain a payoff figure that Edwards knew erroneously did not include the $55,8000
in attorney's fees," refinancing his home equity loan with another bank, and "paying
off the principal and interest without the $55,800, resulting in Edwards's goal of
generating an erroneous release of lien through Washington Mutual's computerized
system." Washington Mutual further alleged that, as soon as it noticed the error, it
rescinded the release and properly prepared and filed the recission of release." In the
portion of its petition detailing its requested relief, Washington Mutual explained that
it was seeking an order from the trial court "authorizing and compelling foreclosure
of [Edwards's] home to enforce Edwards's obligation to pay the underlying judgment
resulting from the trial in [the prior lawsuit]" as well as an order "confirming the
recission of the [r]elease."

 Contending that the instant suit is one involving an interest in real property,
Edwards filed a motion to transfer venue of the case from Harris County to Fort Bend
County, where his property was located. See Tex. Civ. Prac. & Rem. Code Ann.
§ 15.011 (Vernon 2002). Edwards also filed a general denial.

 In its response to Edwards's motion to transfer venue, Washington Mutual
asserted that the trial court had "continuing jurisdiction to enforce its prior judgment"
by authorizing foreclosure. Washington Mutual further asserted that the dominant
purpose of the suit was to enforce the trial court's prior judgment by foreclosing on
Edwards's deed of trust. Although Washington Mutual acknowledged that real
property was "involved" in the litigation and that the real property may be "disposed"
of by the suit, Washington Mutual further asserted that the requested "foreclosure
[did] not involve resolving who [had] title to land." The trial court denied Edwards's
motion to transfer venue.

 Edwards then filed amended answers, in which he raised a number of
affirmative defenses, including accord and satisfaction and waiver. Edwards argued
that Washington Mutual had waived its right to contend that the attorney's fees
awarded in the prior lawsuit remained secured by the security instrument because
Washington Mutual had acted inconsistently by previously seeking these fees from
Edwards personally. Edwards also asserted counter claims against Washington
Mutual as well as third-party claims against Herzog for "filing of fraudulent liens,"
debt collection violations, deceptive trade practices, breach of contract, and violations
of the Texas Constitution. In support of his claims for filing fraudulent liens,
Edwards asserted that the affidavit filed by Herzog and the recission document filed
by Washington Mutual purported to "create a lien" against his property. In support
of his claim for breach of contract, Edwards alleged that Washington Mutual had
failed to comply with its promise to cancel the promissory note and release its lien in
return for full payment of the loan. 

 Washington Mutual subsequently filed an amended petition, seeking a
declaration that "the mistakenly executed and filed" release had been properly
rescinded as well as a declaration "confirming the indebtedness owed and secured by
the security instrument." In addition to these claims for declaratory relief,
Washington Mutual also made a direct claim for recission of the release on the
ground of mutual or unilateral mistake. 

 Herzog, who had withdrawn from representing Washington Mutual in light of
the direct claims asserted against him, filed a summary judgment motion on those
claims. Washington Mutual also filed a summary judgment motion on both its claims
and Edwards's claims. Washington Mutual asserted that, after entry of the trial
court's judgment in the prior lawsuit, Edwards had paid the outstanding principal and
interest on the loan but not the attorney's fees, Washington Mutual's computerized
payment system had erroneously generated a release upon receiving Edwards's
payment, and, as soon as Washington Mutual noticed the error, it rescinded the
release. Washington Mutual attached to its motion a copy of the note, security
instrument, release, Herzog's affidavit, the recission, and the judgment, findings of
fact, and conclusions of law from the prior lawsuit. In addition, Washington Mutual
attached the affidavit testimony of Eric Gregory, an asset recovery specialist for
Washington Mutual, who testified that the amounts owed to Washington Mutual from
the prior lawsuit had never been paid off by Edwards and that the Washington Mutual
system had generated an erroneous release. 

 The trial court granted Herzog's and Washington Mutual's summary judgment
motions, declaring that the amounts awarded in the prior lawsuit remained secured
by the security instrument, Washington Mutual was allowed to take all legal actions
allowed under law to collect the outstanding balance and to enforce its lien secured
by the security instrument, Washington Mutual's release was inadvertent and the
result of a mistake, the release was properly rescinded by the recission of release of
lien and Herzog's affidavit, and Washington Mutual's lien was valid and enforceable.

 Additionally, on a motion filed by Herzog, the trial court imposed sanctions
against Edwards and his attorney, Steven Poock. See Tex. R. Civ. P. 13. The trial
court found that Edwards and Poock had "evidenced a vindictive desire" against
Washington Mutual and Herzog, had engaged in "malicious and unwarranted
conduct, in bad faith, for purposes of harassing Herzog," all of the claims made
against Herzog were groundless and without any basis in law or fact, and Herzog's
affidavit had not "created" a lien. The trial court awarded Herzog $8,555 in
attorney's fees as sanctions.

Standard of Review

 An appellate court reviews a trial court's denial of a motion to transfer venue
de novo. Killeen v. Lighthouse Elec. Contractors, L.P., 248 S.W.3d 343, 347 (Tex.
App.--San Antonio 2007, pet. denied) (citing Wilson v. Tex. Parks & Wildlife Dep't,
886 S.W.2d 259, 260-62 (Tex. 1994)). In deciding whether the trial court properly
determined venue, we consider the entire record. Tex. Civ. Prac. & Rem. Code
Ann. § 15.064(b) (Vernon 2002); see also Wilson, 886 S.W.2d at 261-62. A trial
court's erroneous denial of a motion to transfer venue is not harmless and requires
reversal of the judgment and remand for a new trial. Tex. Civ. Prac. & Rem. Code
Ann. § 15.064(b) (Vernon 2002); Airvantage L.L.C. v. TBAN Props., #1 L.T.D., 269
S.W.3d 254, 257 (Tex. App.--Dallas 2008, no pet.).

Mandatory Venue

 In the ninth issue, Edwards argues that the trial court erred in denying his
motion to transfer venue of the case from Harris County to Fort Bend County because
Washington Mutual, in its original petition, sought to foreclose on Edwards's
property located in Fort Bend County, in which venue is mandatory. See Tex. Civ.
Prac. & Rem. Code Ann. § 15.011. Edwards asserts that the relief ultimately
requested by Washington Mutual in the instant lawsuit included a declaration that the
release of lien, which was filed in Fort Bend County, had been properly rescinded. 
Although Edwards acknowledges that Washington Mutual amended its petition to
omit a specific request for an order authorizing foreclosure, he asserts that
Washington Mutual's continued request for recission of the release was a claim that
involved an interest in real property covered by section 15.011.

 Washington Mutual asserts that the "dominant purpose" of its suit was not to
recover an interest in property but rather to "enforce the trial court's prior judgment."
It concedes that "another primary purpose" of the suit was "to obtain a declaratory
judgment that Washington Mutual's recission of the release of lien was effective." 
Washington Mutual further asserts that even if the suit's dominant purpose was to
"fix or foreclose on a lien," such a claim is not a claim to "recover an interest in real
property" as contemplated by section 15.011. 

 Section 15.011, the mandatory venue provision that governs venue in suits
involving disputes over real property, provides,

Actions for recovery of real property or an estate or interest in real
property, for partition of real property, to remove encumbrances from
the title to real property, for recovery of damages to real property, or to
quiet title to real property shall be brought in the county in which all or
a part of the property is located.


Tex. Civ. Prac. & Rem. Code Ann. § 15.011(emphasis added). The Texas Supreme
Court has recently explained that section 15.011's additional reference to "actions for
an 'interest' in real property," which were not addressed by the predecessor venue
provision for real property disputes, "suggests that the Legislature intended section
15.011 to be more inclusive regarding the types of real property suits subject to
mandatory venue." In re Applied Chem. Magnesias Corp., 206 S.W.3d 114, 118
(Tex. 2006) (orig. proceeding). 

 Two venue facts must be established to show that venue is mandatory under
section 15.011: (1) that the nature of the suit fits within those listed in section 15.011;
and (2) that all or part of the realty at issue is located in the county of suit. See
Airvantage L.L.C., 269 S.W.3d at 257; In re City Nat'l Bank, 257 S.W.3d 452, 454
(Tex. App.--Tyler 2008, orig. proceeding, mand. denied). It is undisputed that
Edwards's property is located in Fort Bend County. Thus, the critical issue in this
appeal is whether the instant suit affects or involves an interest in Edwards's property,
is one to remove an encumbrance or quiet title to this property, or otherwise falls
within the purview of section 15.011. See In re Applied Chem. Magnesias Corp.,
206 S.W.3d at 118.

 "It is the ultimate or dominant purpose of a suit that determines whether a
particular suit falls under the mandatory venue statute, and not how the cause of
action is described by the parties." In re City Nat'l Bank, 257 S.W.3d at 454 (citing
Bracewell v. Fair, 638 S.W.2d 612, 615 (Tex. App.--Houston [1st Dist.] 1982, no
writ)). The nature of the plaintiff's claim is determined from the principal right
asserted and the relief sought in the plaintiff's petition. Id. at 454-55 (citing In re
Stroud Oil Properties, Inc., 110 S.W.3d 18, 25 (Tex. App.--Waco 2002, orig.
proceeding)); see also Airvantage L.L.C., 269 S.W.3d at 257 ("Whether the recovery
is called conversion, breach of contract, or other non-real property types of recovery,
the true nature of the lawsuit depends on the facts alleged in the petition, the rights
asserted, and the relief sought.") . The fact that a party seeks declaratory relief is not
dispositive of the issue, and we do not make special distinctions for real property suits
simply because they are couched in terms of a declaratory judgment action. In re
Applied Chem. Magnesias Corp., 206 S.W.3d at 118; N. Natural Gas Co. v. Chisos
Joint Venture I, 142 S.W.3d 447, 453 (Tex. App.--El Paso 2004, no pet.). "Once it
is demonstrated that the court's judgment would have some effect on an interest in
land, then the venue of the suit is properly fixed under the mandatory venue statute." 
Airvantage L.L.C., 269 S.W.3d at 257; N. Natural Gas, 142 S.W.3d at 453 (emphasis
added). Moreover, if a mandatory venue provision applies to any claims or causes
of action, then all claims and causes of action arising from the same transaction must
be brought in the county of mandatory venue. See Tex. Civ. Prac. & Rem. Code
Ann. § 15.004 (Vernon 2002); Airvantage L.L.C., 269 S.W.3d at 257.

 Here, in its original petition, although Washington Mutual alleged that it was
bringing the instant suit to enforce the judgment in the prior lawsuit, the instant suit
is actually based upon an alleged "second scheme" committed by Edwards to get
Washington Mutual to erroneously issue a pay-off statement and then erroneously
prepare and file a release of its lien on Edwards's real property in Fort Bend County. 
Thus, despite Washington Mutual's characterization of the instant suit, Washington
Mutual did not merely seek to enforce the judgment in the prior lawsuit, but rather
sought an order "confirming" the recission of the release that it alleges it had
subsequently, and mistakenly, filed. Washington Mutual also sought an order
"authorizing and compelling foreclosure" of Edwards's property based upon
Edwards's alleged failures to pay the full amounts owed. In fact, in its response to
Edwards's motion to transfer venue, even Washington Mutual conceded that
Edwards's property was "involved" in the litigation and that Edwards's property
might have to be "disposed." Although Washington Mutual partially modified its
requested relief in its amended petition, which was filed after the trial court had
denied the motion to transfer venue, Washington Mutual maintained its request for
a declaration that the release had been properly rescinded. Additionally, Washington
Mutual sought declarations that its release had been mistakenly executed and filed,
and Washington Mutual also added a direct claim for recission of the release on the
ground of mutual or unilateral mistake.

 Based upon both Washington Mutual's and Edwards's pleadings, it is clear that
the parties were not truly disputing the existence or validity of the judgment from the
prior lawsuit, but rather the effect of the release and the recission documents filed by 
Washington Mutual in the Fort Bend County real property records. In his answer,
Edwards further contended that Herzog and Washington Mutual had improperly
created or continued the lien on his property by filing these documents in the Fort
Bend County real property records. Although at least part of the dispute between the
parties concerned whether the attorney's fees awarded in the prior judgment remained
secured by the security instrument, the primary dispute between the parties focused
on the effectiveness of the release of the lien, the affidavit, and the recission and
Edwards's and Washington Mutual's competing claims to their respective interests
in the real property located in Fort Bend County. 

 The "dominant purpose" of the suit is further borne out by the trial court's
judgment. The trial court, in its judgment, did not merely confirm its judgment from
the prior lawsuit, but rather declared that Washington Mutual was allowed to take all
legal actions allowed under law to collect the outstanding balance and to enforce its
lien secured by the security instrument, Washington Mutual's release was inadvertent
and the result of a mistake, the release was properly rescinded by the recission of
release of lien and Herzog's affidavit, and Washington Mutual's lien remained valid
and enforceable, despite Washington Mutual's filing of the release and despite other
conduct alleged by Edwards. 

 Moreover, the security instrument provided that Edwards, in consideration for
the loan, granted and conveyed his property, as well as any "further interest" that he
obtained in the property, to Washington Mutual, in trust, with the power of sale. 
Also, the release, the specific document that Washington Mutual was seeking to
rescind through declaratory relief or through its direct claim for recisson on the
ground of mistake, described Washington Mutual as the "owner of the beneficial
interest" and further provided that in consideration for full satisfaction of the loan, 
Washington Mutual reconveyed the "estate, title, and interest" it had held under the
security instrument. 

 In support of its contention that the trial court properly denied Edwards's
motion to transfer venue, Washington Mutual primarily relies upon Scarth v. First
Bank & Trust Co., 711 S.W.2d 140 (Tex. App.--Amarillo 1986, no writ) and
Republic Nat'l Bank of Dallas v. Estes, 422 S.W.2d 834 (Tex. Civ. App.--Dallas
1967, no writ). In Republic, the Dallas Court of Appeals, considering a predecessor
mandatory venue provision that did not expressly apply to "[a]ctions for recovery of
real property or an estate or interest in real property," determined that "[a] suit to fix
or foreclose a lien on land" did not fall within the provision. 422 S.W.2d at 835-36
(stating that suit did not fall within mandatory venue provision, which applied to suits
"to recover land or damages thereto, to quiet title to land, or to stay waste thereon"). 
In Scarth, the Amarillo Court of Appeals, after citing Republic as authority, stated
that the mandatory venue provision in effect at that time was "inapplicable where the
action in question involves title only incidentally or secondarily, and not directly." 
711 S.W.2d at 143. Although the opinion in Scarth was based upon a mandatory
venue provision that had been amended to apply to "[a]ctions for recovery of real
property or an estate or interest in real property to section 15.001," the court attached
no significance to this language. Id. at 141-42. In fact, despite these amendments
to the mandatory venue provision, the court in Scarth stated that the similarity
between the provision before it and the provision at issue in Republic was "readily
apparent," and it found cases, like Republic, that had interpreted the predecessor
mandatory venue provision to be "analagous." (1) Id. at 142. However, as noted above,
the predecessor mandatory venue provision did not apply as broadly to actions for an
"interest" in real property, and the Texas Supreme Court has recently recognized that
section 15.011 is designed "to be more inclusive regarding the types of real property
suits subject to mandatory venue." In re Applied Chem. Magnesias Corp., 206
S.W.3d at 118.

 Additionally, other courts of appeals that have more recently construed section
15.011 have also indicated that, by its plain terms, it applies to a broader class of
cases than the predecessor statute. For example, in Airvantage L.L.C., a plaintiff
sought a declaration that a lis pendens, which is a notice recorded in the chain of real
property to warn all persons that certain property is the subject matter of litigation,
was invalid and void. 269 S.W.3d at 257. The sole issue in the case was whether
the suit affected "an interest in land" or was one to remove an encumbrance or quiet
title and, thus, subject to the mandatary venue provision in section 15.011. Id. The
court noted that "[a] 'cloud' on legal title includes any deed, contract, judgment lien
or other instrument, not void on its face, which purports to convey an interest in or
makes any charge upon the land of the true owner, the invalidity of which would
require proof." Id. at 258. 

 In order to determine if the suit fell within the purview of section 15.011, the
court considered the plaintiff's petition, in which the plaintiff asserted that the lis
pendens was wrongful and demanded its release. Id. The court concluded that "all
of the relief ultimately sought require[d] adjudication of the validity of the [l]iens"
being disputed by the parties and that, despite the plaintiff's characterization of its
claims, "the pleadings demonstrate[d] that, at its core, the suit affect[ed] an interest
in land or is tantamount to a suit to quiet title or remove an encumbrance from real
property." Id. at 259 (emphasis added). The court supported its conclusion that the
suit "was of the type" encompassed by section 15.011 by noting that the final
judgment rendered by the trial court declared the liens invalid and ordered the parties
to take nothing on the remaining claims. Id. Thus, the court determined that the
parties' dispute "centered" on their respective "interests" in the property at issue. Id.

 Similarly, in In re City National Bank, the plaintiff executed a promissory note
payable to a bank, which was secured by a deed of trust lien on his real property. 257
S.W.3d at 453. The plaintiff became delinquent on the note, the bank sent a letter to
the plaintiff informing him of the delinquency and giving him twenty days to cure it,
and the bank also informed the plaintiff that it would begin foreclosure proceedings
if the delinquency was not cured. Id. The plaintiff then filed a petition seeking
damages as well as temporary and permanent injunctive relief to prohibit the bank's
foreclosure of its deed of trust lien. Id. at 453-54. The bank filed a motion to
transfer venue under section 15.011, arguing that because the case involved an
interest in real property, it should be transferred to the county where the property was
located. Id. at 454. The trial court denied the motion to transfer venue. Id.

 The court of appeals stated that "[t]he lien created by a deed of trust is an
encumbrance on the title to real property." Id. at 455 (emphasis added) (citing
Pringle v. S. Bankers Life Ins. Co., 296 S.W.2d 347, 349 (Tex. Civ. App.--Austin
1956, no writ)). The court further stated that a suit "to cancel a deed of trust
procured by fraud is a suit to remove an encumbrance from title and affects an interest
in land." Id. The court concluded that the "ultimate relief" sought by the plaintiff
"relating to the deed of trust [was] a permanent injunction to prevent foreclosure of
the [b]ank's deed of trust lien on his land." Id. The court recognized that "[t]he
issuance of a permanent injunction would not result in the cancellation of the deed
of trust, thereby removing the encumbrance from [the plaintiff's] title," but the court
stated that, "[a]s a practical matter, . . . , it would render a nullity the [b]ank's lien
and its corresponding right to foreclose under the terms of the deed of trust." Id.; see
also In re Applied Chem. Magnesias Corp., 206 S.W.3d at 119 (considering "[t]he
essence" of the dispute between the parties, and holding that issue of whether party
held mineral lease on property "involved an interest in real property"). The court
continued, "In effect, [the plaintiff] would avoid the lien and the [b]ank would be left
without security for [the plaintiff's] promissory note." In re City National Bank, 257
S.W.3d at 457. Finally, the court stated that, "[u]nder these facts, [the plaintiff's] suit
[was] tantamount to a suit to remove an encumbrance from the title [to] real
property," and, thus, the judgment the plaintiff sought would "affect an interest in real
property." Id. Thus, the court held that the trial court had erred in denying the
motion to transfer venue. Id.

 Accordingly, we hold that the instant lawsuit is an action for an interest in real
property under section 15.011 and that the trial court erred in denying Edwards's
motion to transfer venue of the case from Harris County to Fort Bend County.

 We sustain Edwards's ninth issue.


Conclusion

 As noted above, if a mandatory venue provision applies to any claims or causes
of action, then all claims and causes of action arising from the same transaction must
be brought in the county of mandatory venue. See Tex. Civ. Prac. & Rem. Code
Ann. § 15.004 (Vernon 2002); Airvantage L.L.C., 269 S.W.3d at 259. Here, none of
the parties contend that their respective claims do not arise form the same transaction,
and no party argues that only some of the claims are subject to section 15.011. As
further noted above, a trial court's erroneous denial of a motion to transfer venue is
not harmless and requires reversal of the judgment and remand for a new trial. Tex.
Civ. Prac. & Rem. Code Ann. § 15.064(b); Airvantage L.L.C., 269 S.W.3d at 257.
Accordingly, having determined that the trial court erred in denying Edwards's
motion to transfer venue, we need not address Edwards's remaining issues. We
reverse the judgment of the trial court and remand the case with instructions to
transfer venue of the case from Harris County to Fort Bend County. 



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.

1. The Amarillo Court of Appeals has applied the holdings in Scarth v. First Bank &
Trust Co., 711 S.W.2d 140 (Tex. App.--Amarillo 1986, no writ) and Republic Nat'l
Bank of Dallas v. Estes, 422 S.W.2d 834 (Tex. Civ. App.--Dallas 1967, no writ) to
hold that a suit to reinstate a lien on a piece of property did not fall within the purview
of section 15.011. See Schwab v. Wimmer, No. 07-98-0218-CV, 1998 WL 852788,
at *2-3 (Tex. App.--Amarillo Dec. 10, 1998, no pet.) (not designated for pub.). 
Although we recognize that our holding is in conflict with this holding, we note that
the court in Schwab did not have for its benefit the recent Texas Supreme Court
opinion in In re Applied Chem. Magnesias Corp., which explains that section 15.011
is now more inclusive of the types of suits subject to the mandatory venue provision. 
206 S.W.3d 114, 118 (Tex. 2006).